# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| | : | **1 : 12 C R 95** |
| v. | : | **I N D I C T M E N T** |
| | : | |
| | : | **18 U.S.C. § 2** |
| **(1) MASAI WILLIAMS** | : | **21 U.S.C. § 841(a)(1)** |
| **a/k/a "Lee"** | : | **21 U.S.C. § 841(b)(1)(A)(vii)** |
| **(2) DAVID ALEXANDER** | : | **21 U.S.C. § 841(b)(1)(B)(vii)** |
| **a/k/a "Dirty"** | : | **21 U.S.C. § 846** |
| **(3) QUINCY SHOWES** | : | **21 U.S.C. §§ 853(a),(p)** |
| **(4) ANTONIO HOWARD** | : | **21 U.S.C. § 860** |
| **a/k/a "T.O."** | : | |
| **(5) RANDY STEELE** | : | |
| **(6) BRUCE STEWART** | : | J. BARRETT |
| **a/k/a "Donnie"** | : | |
| **(7) DARIAS JACKSON** | : | |
| **a/k/a "Jizzle"** | : | |
| **(8) MONSANNA TORBERT** | : | |
| **a/k/a "Tyrone" or "Suki"** | : | |

- - - - - - - - - - - - - - - - - - -

## THE GRAND JURY CHARGES THAT:

### COUNT 1

Beginning from in or about March 1, 2012, the exact date being unknown to the grand jury, and continuing up to and including August 29, 2012, in the Southern District of Ohio and elsewhere, **MASAI WILLIAMS a/k/a "Lee," DAVID ALEXANDER a/k/a "Dirty," QUINCY SHOWES, ANTONIO HOWARD a/k/a "T.O.," RANDY STEELE, BRUCE STEWART  a/k/a "Donnie," DARIAS JACKSON a/k/a "Jizzle," and MONSANNA TORBERT, a/k/a "Tyrone" or "Suki"** the defendants herein, and others both known and unknown to the grand jury, did knowingly, willfully, intentionally, and unlawfully combine, conspire, confederate, and agree, and have a tacit understanding with each other, to commit offenses against the United States, to wit:  to knowingly, willfully, intentionally and unlawfully distribute and possess with intent to distribute one thousand kilograms or more of a mixture or substance containing a detectable amount

of marijuana, a Schedule I controlled substance; in violation of 21 U.S.C. § 846 & §§ 841(a)(1), (b)(1)(A)(vii).

## MEANS AND METHODS

At all times herein, "marijuana" refers to the Schedule I controlled substance illegally possessed and/or distributed.

It was a part of the conspiracy that **WILLIAMS** and **ALEXANDER** would speak directly to the marijuana source of supply located in Dallas, Texas, and make arrangements for loads of marijuana to be sent to the Cincinnati, Ohio area.

It was further a part of the conspiracy that once the shipments of marijuana reached Cincinnati, Ohio the marijuana was given to **SHOWES**, who acted as a drug stash house keeper and who would arrange to distribute the marijuana to **STEWART, STEELE, HOWARD, JACKSON, TORBERT** and others.

It was further a part of the conspiracy that members of the conspiracy would then distribute the drugs in order to obtain U.S. currency and other things of value such as vehicles.

It was further a part of the conspiracy that members of the conspiracy utilized a variety of locations for meetings and transfers of U.S. currency and marijuana, and that some of these locations were within one thousand feet of real property comprising elementary schools and playgrounds.

In furtherance of the conspiracy and in order to accomplish its objectives, the defendants, **MASAI WILLIAMS, DAVID ALEXANDER, QUINCY SHOWES, ANTONIO HOWARD, RANDY STEELE, BRUCE STEWART, DARIAS JACKSON and MONSANNA TORBERT** committed, among others, the following:

2

## OVERT ACTS

1. On May 25, 2012, **WILLIAMS** and **ALEXANDER** transferred approximately $500,000 in U.S. Currency - proceeds of illegal marijuana trafficking - to a person they believed to be associated with the source of supply for marijuana.

2. On June 5, 2012, **WILLIAMS** transferred approximately $400,000 in U.S. Currency - proceeds of illegal marijuana trafficking - to a person he believed to be associated with the source of supply for marijuana.

3. On July 7, 2012, **WILLIAMS** engaged in a telephone conversation with his marijuana source of supply, discussing a sample of marijuana that was to be delivered to the Cincinnati, Ohio area later that day.

4. On July 7, 2012, **WILLIAMS** and **STEWART** engaged in a series of telephone conversations discussing the delivery of the sample of marijuana. During these calls, **STEWART** agreed to meet the courier on behalf of **WILLIAMS** at 2888 Fischer Place, Cincinnati, Ohio.

5. On July 7, 2012, at approximately 8:30 pm, **STEWART** met with the courier and took possession of a sample (approximately 1 kilogram) of what appeared to be marijuana.

6. On July 8, 2012, **WILLIAMS** engaged in a series of telephone conversations with his marijuana source of supply discussing a delivery of approximately 320 pounds of marijuana that was to be delivered to **WILLIAMS** and **ALEXANDER** later that same day.

7. On July 8, 2012, **WILLIAMS** engaged in a series of telephone conversations with **SHOWES** where **SHOWES** agreed to meet the courier and take possession of a marijuana shipment.

8. On July 8, 2012, at 2851 Shaffer Avenue, Cincinnati, Ohio, **SHOWES** met the courier and took possession of the marijuana shipment. **SHOWES** and **WILLIAMS**

3

engaged in telephone conversations and **SHOWES** described the marijuana to
**WILLIAMS** and complained to **WILLIAMS** about the quality of the marijuana.

9. On July 8, 2012, **WILLIAMS** engaged in telephone conversations with **his**
marijuana source of supply during which **WILLIAMS** complained to the source of supply
about the quality of the marijuana.

10. On July 8, 2012, **WILLIAMS** engaged in telephone conversations with
**SHOWES** during which **SHOWES** stated that he was going to come to **WILLIAMS'**
apartment to bring **WILLIAMS** a sample of the marijuana that was delivered in order to
show **WILLIAMS** the poor quality of the marijuana.

11. On July 9, 2012,**WILLIAMS** engaged in telephone conversations with
**ALEXANDER** during which the two discussed the fact that they needed to talk with the
marijuana source of supply about the quality of the marijuana that was delivered. In
addition, **WILLIAMS** and **ALEXANDER** discussed how much they would charge people
for the marijuana that was delivered.

12. On July 9, 2012, **WILLIAMS**, **ALEXANDER** and **SHOWES** met at 2851
Shaffer Avenue, Cincinnati, Ohio, which was utilized by **WILLIAMS** and **ALEXANDER**
and their drug trafficking organization. **STEWART** met them there and picked up a
package of marijuana from **SHOWES**.

13. On July 9, 2012, **WILLIAMS** engaged in telephone conversations with
**TORBERT** where **WILLIAMS** advised **TORBERT** how to take delivery of a shipment of
marijuana from **SHOWES,** and **TORBERT** describes how he will sell it.

14. On July 10, 2012, **WILLIAMS** engaged in telephone conversations with
**TORBERT** where the two affirmed that **TORBERT** had received the marijuana.

15. On July 10, 2012, **WILLIAMS** and **SHOWES** planned to meet at 2851
Shaffer Avenue in order to arrange for a delivery of marijuana to **STEELE** for the
purpose of distribution.

4

16. On July 10, 2012, **SHOWES** met with **STEELE** at 3277 Werk Road where **SHOWES** transferred a large cardboard box appearing to contain marijuana to **STEELE**.

17. On July 10, 2012, **WILLIAMS** engaged in telephone conversations with the marijuana source of supply where the two discussed the need to meet in order to discuss their illegal drug trafficking business.

18. On July 10, 2012, **WILLIAMS** and **ALEXANDER** then met with the source of marijuana supply at an outlet mall in the Cincinnati, Ohio, area.

19. On July 11th, 2012, **WILLIAMS** engaged in telephone conversations with **SHOWES** during which **WILLIAMS** directed **SHOWES** to deliver approximately 50 pounds of marijuana to "T.O." (Antonio **HOWARD**) at 2888 Fischer Place, Cincinnati, Ohio.

20. On July 11th, 2012, at 2888 Fischer Place, Cincinnati, Ohio, **HOWARD** took possession of the shipment of marijuana from **SHOWES**, for the purpose of distributing it to others.

21. On July 11, 2012, **WILLIAMS** engaged in telephone conversations with **TORBERT** where **TORBERT** advised **WILLIAMS** that he had money to deliver to **WILLIAMS** and asked if **WILLIAMS** had any more marijuana left to sell.

22. On July 17, 2012, **WILLIAMS** engaged in telephone conversations with his marijuana source of supply during which the two discussed **WILLIAMS** preparation of $100,000 in illegal drug proceeds for the source of supply.

23. On July 17, 2012, **SHOWES** purchased two white shopping boxes from a Walgreens located on Harrison Avenue as he and **WILLIAMS** discussed the best type of boxes to use.

24. On July 17, 2012, **WILLIAMS, ALEXANDER, SHOWES** and **STEWART** drove to and from 2888 Fischer Place, Cincinnati, Ohio, 3478 Hazelwood Avenue,

Cincinnati, Ohio, 2851 Shaffer Avenue, Cincinnati, Ohio and 2545 Meyerhill Drive, Cincinnati, Ohio and 2516 Orland Avenue, Cincinnati, Ohio throughout the day until they all met at 2847 Werk Road, Cincinnati, Ohio. While at 2847 Werk Road, surveillance observed **SHOWES** deliver two empty white shipping boxes he had purchased at the Walgreens to **WILLIAMS**. **WILLIAMS** and **ALEXANDER** entered 2847 Werk Road with the two flat white boxes and a green roll of packing tape, then after approximately 20 minutes, **WILLIAMS** and **ALEXANDER** exited 2847 Werk Road with the two white boxes, now folded into a traditional box shape and carried by the pair as if heavy. The two placed the white boxes into the trunk of **SHOWES'** Lexus.

25. On July 17, 2012, **WILLIAMS** engaged in telephone conversations with his marijuana source of supply where **WILLIAMS** described to the source of supply that each white shipping box had a shoe box inside of it and that each shoe box contained $50,000.

26. On July 17, 2012, **WILLIAMS**, **ALEXANDER** and **SHOWES** gathered at 8273 Georgianna Drive, Cincinnati Ohio and watched as **SHOWES** backed his Lexus into the driveway of that address, whereupon **WILLIAMS**, **ALEXANDER**, **SHOWES**, **STEWART** and another male went to Buffalo Wild Wings for dinner. While at dinner **WILLIAMS** engaged in telephone conversations with his marijuana source of supply, discussing when the courier would arrive and the fact that the courier was driving a FedEx van but worked for the source of supply.

27. On July 17, 2012, the other male that went to Buffalo Wild Wings with **WILLIAMS**, **ALEXANDER**, **SHOWES** and **STEWART** gave the two white shipping boxes containing over $100,000 to a FedEx driver who had parked in the driveway of 8273 Georgianna Drive, Cincinnati, Ohio.

28. On August 1, 2012, **WILLIAMS** engaged in telephone conversations with co-conspirators for the purpose of arranging a meeting at **WILLIAMS'** home located at

6

3478 Hazelwood Avenue, Apartment #8, Cincinnati, Ohio. **WILLIAMS** met with
**ALEXANDER**, **SHOWES**, **STEWART**, **JACKSON** and others, and discussed their
illegal drug trafficking business.

29. On August 7, 2012, **WILLIAMS** engaged in telephone conversations with his
marijuana source of supply and discussed the delivery of a load of over 500 pounds of
marijuana due to be delivered to **WILLIAMS** and **ALEXANDER** on August 8, 2012.

30. On August 7, 2012, **WILLIAMS** engaged in telephone conversations with
**SHOWES** where **SHOWES** was instructed to rent a U-Haul on behalf of **WILLIAMS** and
**ALEXANDER** in order to transport the marijuana due to be delivered the following day.

31. On August 7, 2012, **SHOWES** rented a U-Haul for two days, for the purpose
of transporting marijuana, through a female associate.

32. On August 8, 2012, **WILLIAMS** engaged in telephone conversations with his
marijuana source of supply coordinating the delivery of marijuana to **WILLIAMS** and
**ALEXANDER**.

33. On August 8, 2012, approximately 577 pounds of marijuana was delivered to
the U-Haul rented by **SHOWES** at a location where **WILLIAMS**, **ALEXANDER**,
**SHOWES** and **JACKSON** met to receive and coordinate its further distribution.

34. On August 30, 2012, **WILLIAMS** possessed a firearm, a scale, a money
counter and drug preparation materials in furtherance of his illegal drug trafficking
business, and approximately $60,000 in proceeds obtained through his illegal drug
trafficking business.

35. On August 30, 2012, **ALEXANDER** possessed a firearm in furtherance of
his illegal drug trafficking business.

36. On August 30, 2012, **STEWART** possessed a firearm in furtherance of his
illegal drug trafficking business.

**All in violation of 21 U.S.C. § 846.**

## COUNT 2

1. The grand jury incorporates by reference those allegations contained in Count 1 of this Indictment.

2. On or about August 8, 2012, in the Southern District of Ohio, the defendants, **MASAI WILLIAMS a/k/a "Lee," DAVID ALEXANDER a/k/a "Dirty," QUINCY SHOWES, ANTONIO HOWARD a/k/a "T.O.," RANDY STEELE, BRUCE STEWART a/k/a "Donnie," DARIAS JACKSON a/k/a "Jizzle," and MONSANNA TORBERT, a/k/a "Tyrone" or "Suki,"** did knowingly and intentionally, unlawfully possess with the intent to distribute a Schedule I Controlled Substance to wit, marijuana in excess of one hundred kilograms.

**In violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vii), 18 U.S.C. § 2 and Pinkerton v. United States, 328 U.S. 640 (1946).**

## COUNT 3

On or about July 9, 2012, in the Southern District of Ohio, the defendants, **MASAI WILLIAMS a/k/a "Lee," DAVID ALEXANDER a/k/a "Dirty," QUINCY SHOWES, ANTONIO HOWARD a/k/a "T.O.," RANDY STEELE, BRUCE STEWART a/k/a "Donnie," DARIAS JACKSON a/k/a "Jizzle," and MONSANNA TORBERT, a/k/a "Tyrone" or "Suki,"** did unlawfully, knowingly, and intentionally possess with intent to distribute 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, within 1,000 feet of the real property comprising the private elementary school known as the Saint Catherine of Sienna school.

**In violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 860(a), 18 U.S.C. § 2 and Pinkerton v. United States, 328 U.S. 640 (1946).**

8

## Forfeiture Allegations

The allegations contained in Counts 1 and/or 2 and/or3 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 21 U.S.C. § 853(a).  As a result of the violation in Counts 1 and/or 2 and/or 3, each defendant shall forfeit to the United States:

(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation; including but not limited to:

(a) one (1) Orange 2006 Dodge Charger 4-door bearing Ohio registration FQP6405 and VIN# 2B3KA53H56H512010 registered to Janeisha TORBERT at 5015 Sidney Road, Cincinnati, Ohio; and

(b) one (1) Green 2005 Chevrolet Corvette 2-door bearing Ohio registration FJT6596 and VIN# 1G1YY24UX55104485 registered to Lashaun BRADLEY at 2888 Fischer Place, Cincinnati, Ohio; and

(c) one (1) 1969 Oldsmobile Cutlass 2-door bearing VIN# 336679Z135871 and titled to Monique C. DUNN at 135 Rion Lane, Cincinnati, Ohio; and

(2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, including but not limited to:

(a) one (1) Silver 2011 Ford Taurus 4-door bearing Ohio registration FDT4172 and VIN# 1FAHP2KT1BG142228 registered to Janice L. HOWARD at 2847 Werk Road, Cincinnati, Ohio;

(b) one (1) Grey 2000 Lexus 4-door bearing Ohio registration FNW7852 and VIN# JT8BF28G3Y5078578 registered to Quentessa SHOWES at 2703 East Tower Drive #572, Cincinnati, Ohio;

9

(c) one (1) Hi-Point .380 cal; Model CF380; Serial Number: P8029417 seized from 2710 E. Tower Drive, Apartment #315, Cincinnati, Ohio; Owner: Bruce Stewart.  Fully loaded at time of seizure;

(d) one (1) Smith & Wesson 9mm; Model M&P; Serial Number: MPT2513 seized from 2516 Sarvis Court, Cincinnati, Ohio; Owner: Unknown.  Fully loaded at time of seizure;

(e) one (1) Kel Tec 9mm Luger; Model PF9; Serial Number: Serial Number: S3R78 Seized from 2545 Meyerhill Drive, Cincinnati, Ohio; Owner: David Alexander.  Fully loaded at time of seizure;

(f) one (1) Glock .40 cal; Model 27; Serial Number: CPW470US seized from 3478 Hazelwood Avenue, Apartment #8, Cincinnati, Ohio; Owner:  Masai Williams.  Fully loaded at time of seizure;

(g) $200,045 seized from Roger M. Garvey (FedEx driver) during traffic stop just outside of Indianapolis, Indiana;

(h) $121,680 seized pursuant to the execution of search warrant at 2847 Werk Road, Cincinnati, Ohio;

(i) $2,600 seized pursuant to the execution of search warrant at 3478 Hazelwood Ave. #8, Cincinnati, Ohio;

(j) $2,900 seized pursuant to the execution of search warrant at 2545 Meyerhill Dr., Cincinnati, Ohio;

(k) $2,578 seized pursuant to the arrest of Randy Steele ($528 in wallet and $2,050 in glove box);

(l) $4,980 seized pursuant to the arrest of Antonio Howard and consent search of luggage found in bed of truck.

## Substitute Assets

Pursuant to 21 U.S.C. § 853(p), if any of the property that is forfeitable to the United States under 21 U.S.C. § 853(a), as a result of any act or omission of the defendant,

(i) cannot be located upon the exercise of due diligence;

(ii) has been transferred or sold to, or deposited with, a third party;

(iii) has been placed beyond the jurisdiction of the court;

(iv) has been substantially diminished in value; or

(v) has been commingled with other property which cannot be divided without difficulty;

the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) and (2).

**A TRUE BILL.**

_____
GRAND JURY FOREPERSON

**CARTER M. STEWART**
**United States Attorney**

_____
**ROBERT C. BRICHLER**
**Chief, Organized Crime Drug Enforcement Task Force**

11